JAMES B. GEORGE,
ADMR. OF
ABEL SPENCER     DECEMBER TERM, 1847.
vs.
CHARLOTTE SPENCER ET AL.

[GIFTS FROM HUSBAND TO WIFE AFTER MARRIAGE—EVIDENCE.]

IT is clearly established, that courts of equity will uphold gifts from a husband to his wife after marriage, though such gifts are ordinarily void at law, and that the gift will, as against the husband, but not as against his creditors, vest in the wife an unimpeachable right of property, which will be treated as her exclusive and separate estate.

But the courts, for obvious and wise purposes, require clear, satisfactory and incontrovertible evidence to establish a gift of this description.

[The Chancellor has given a full statement of the pleadings and facts in the cause, in the following opinion :]

THE CHANCELLOR :

The bill in this case, was filed on the 9th of June, 1845, and alleged, that the complainant had become the administrator of Abel Spencer, who died intestate, in December, 1844, leaving a widow, Charlotte Spencer, one of the defendants, and one daughter, now the wife of James A. G. Waters. That shortly after assuming this trust, the complainant had discovered, that Charlotte Spencer, had, during the lifetime of her husband, loaned to the said Waters, the sum of $800, for which she had taken his note, and a mortgage, dated 27th of November, 1842. The mortgage being taken in the name of one Sarah Rebecca Marriott, in trust, for the sole and separate use of Charlotte Spencer, and payable with interest, in two years from its date. That complainant had been informed by Waters, that Abel Spencer, had, in his lifetime, forbidden him, (Waters,) to pay the money due upon the mortgage, upon the ground, that the money loaned was not the property of the said Charlotte, but had been covertly taken from him, the said Abel. And the complainant charged, as his belief, that by means of

31*

said mortgage and trust, the said sum of money was attempted to be fraudulently appropriated to the use of the said Charlotte, and that the said Rebecca Marriott was privy and consenting thereto ; that the time limited for the payment of the money having expired, the said Charlotte, since the decease of her husband, had filed a bill in this court, for the sale of the mortgaged property, as will appear by the bill, and the proceedings therein.

That since January last, the complainant had discovered that there was standing, in the name of the said Charlotte, three several parcels of the stock debt of the city of Baltimore, the amounts and dates of the certificates of which are given in the bill ; which investments, the bill alleges, were made in the life time of her husband, and without his consent ; which, after notice, that said stocks were claimed by the complainant, as administrator, were disposed of by the said Charlotte, and the proceeds converted to her use. That the moneys with which these stocks were purchased, were also fraudulently obtained from her husband, by the said Charlotte, she having no means, by which she could have acquired money in any other way, and that all these sums, amounting in the whole to $1516, as well as any other money the said Charlotte may have appropriated to her own use, the complainant, as the administrator of her husband, is entitled to.

The prayer of the bill, is, that Waters may be compelled to account with, and pay, the complainant the amount of the mortgage debt. That the defendant, Charlotte, may be compelled to state from whom, and in what manner, she obtained the said several sums of money, and that she may be required to account with, and pay to, the complainant the proceeds of the stocks so sold, and appropriated to her own use, and that she be compelled to discover and account for any other funds of her late husband, which she may, in like manner, have appropriated to her own use, and that said Rebecca Marriott, may, also, answer and discover, &c.

The bill, also, prayed for an injunction to stay proceedings upon the mortgage, and for general relief. The defendants to this bill, were Waters and his wife, (a daughter of Abel Spen-

cer,) Charlotte Spencer, and Sarah Rebecca Marriott; and an injunction was ordered by the Chancellor, as prayed.

The answer of Charlotte Spencer, admits her marriage with, and the death of Abel Spencer, as alleged, and the grant of letters of administration on his estate, to the complainant. The execution of the mortgage, by Waters, to Sarah Rebecca Marriott, is also admitted, but the respondent denied that her husband only discovered the mortgage after its execution ; on the contrary, she avers, that he knew of, and agreed to, and advised her to lend the money and take the security. Defendant expresses her belief, that her husband never did forbid the said Waters to pay the money due upon the mortgage, unless he may have done so when in a state of intoxication, and deprived thereby of his reason. The answer also denied, that the money loaned upon the mortgage was the property of her said husband ; or that, to any extent, it had been covertly, or in any other manner, taken from him, or kept from his knowledge; on the contrary, she avers, that he was fully aware of her having it, and that it was her separate estate. That it was held, claimed and directed by her, as such, with his full and unqualified approbation and consent. The answer, then, by way of expressing fully, the mode in which she came to be in possession of the money loaned Waters, proceeds to state, that prior to, and at the time of her marriage with Abel Spencer, in 1825, she had, of her own property, and in her own right, the sum of about six hundred dollars, which, at the period of her marriage, was in the hands of Dr. John Cromwell, as a loan from respondent. That after her marriage, the said sum, with the interest thereon, making altogether about seven hundred dollars, was, with the consent of her said husband, and by arrangement and understanding between her and her said husband, lent on interest, to the late Edward Priestly, in the name of Sarah Rebecca Marriott, as trustee for this respondent, and as her separate estate. That the said sum, was, with the accruing interest, placed afterwards in other hands, until, finally, the said Waters, applying to the defendant for a loan on mortgage, and her said husband advising and consenting to it, the

money, with interest accrued thereon, was withdrawn from the last depository, by the said Sarah, and out of it, the sum of eight hundred dollars, loaned the said Waters, on mortgage, the residue of the said fund, being, in part, expended by the defendant, and, in part, invested in the purchase of Baltimore city stock.

The answer admits, that the defendant held, in her own name, at the periods mentioned in the bill, the several amounts of the stock debt of the city of Baltimore, and she avers, that said stocks were purchased with her own money. That of the money with which said stocks were purchased, about three hundred dollars constituted a portion of the money of which she has before spoken, and the residue, being about $416, the defendant says, was given her, by her husband, as her sole and separate property, and with his knowledge and consent she invested the money in the debt of the city of Baltimore, as her separate and exclusive property, and she admits, that she has sold said stocks, and applied the proceeds of sale to her own use, as she had a right to do. The defendant then denies, in general terms, that she has any money, property or funds, belonging to the estate of her husband.

The answers of the other defendants need not be particularly noticed. That, of Waters and wife, admits the allegations of the bill ; whilst the answer of Sarah Rebecca Marriott strongly supports the grounds of defence, set up in the answer of Charlotte Spencer.

The Chancellor, upon the coming in of the answers, dismissed the injunction ; but it was afterwards argued, that the proceedings in the case of Spencer against Waters, on the mortgage, should be stayed, until a determination could be had in this case. It was further argued, that the two cases should be consolidated, and that if the bill in this case, should be dismissed, a decree should pass upon the other bill, for a foreclosure and sale of the mortgaged premises. It was further agreed, that the proof, taken under the commission, should be considered as if taken in both cases, and that the value of the stocks, purchased by the defendant, Charlotte Spencer, in her own name, during the lifetime of her husband, was $716, and that the

estate of Abel Spencer, consisting exclusively of personalty, amounted to $11,213 69, and his debts, which were all paid before the filing of the present bill, to $1556.

The bill referred to, as having been filed by Charlotte Spencer, and which it was agreed should be consolidated with this cause, was filed on the 15th of February, 1845. It was filed in the name of Charlotte Spencer, against James A. G. Waters and Sarah Rebecca Marriott, and prayed for a foreclosure, and sale of the mortgaged property for the payment of the debt, &c.

The last named defendant, in her answer, admitted the averments of the bill, and consented to a decree, as prayed; but Waters, though he admitted the loan of the money, and the execution of the mortgage, relied, in bar of the claim of complainant, on the matters alleged in the bill, in this case, by George, administrator of Spencer, against Charlotte Spencer, and others. An order was passed by the Chancellor, in their case, upon the mortgage, for the examination of Sarah Rebecca Marriott, on the part of the complainant, with a saving of exceptions.

The mortgage, which was exhibited with the bill, was executed by James A. G. Waters, to Sarah Rebecca Marriott, on the 28th of November, 1842, and was to secure the payment of the sum of $800, with interest. The money was, by it, declared to be secured to be paid to the mortgagee, "in trust for the sole and separate use, and exclusive benefit of Charlotte Spencer, free, clear and independent of her present, and any future husband, and of all liability from any such husband's contracts, engagements, or liabilities, and so that it shall not be in the power of the said Sarah Rebecca Marriott, to make the premises hereby conveyed, or said claim, in any way or manner, liable for any indebtedness or liability of any such husband."

Proofs have been taken under the commission, which issued for that purpose, and the case having been argued before, is now to be decided.

Upon a careful examination of the proofs, in this case, my

mind is brought to the conclusion, that the defendant, Charlotte Spencer, had, at the time of her marriage with her late husband, Abel Spencer, some money of her own, and, that he knew of it, and was willing, and consented, that it should be held and invested by her, as her separate estate. Putting aside the answer of Sarah Rebecca Marriott, the trustee, mentioned in the mortgage deed from Waters, and who expressly states, that she held this money as trustee for Mrs. Spencer, and that her husband knew of it, and approved of her loan to Waters, the answer of Mrs. Spencer, which is conceded to be responsive to the bill, shows clearly, that she was in possession of this money at the period of her marriage, and that the disposition made of it, as her separate estate, met with the full concurrence and approbation of her husband.

It is true, this answer is but evidence, and may be overcome by that weight of opposing proof which the chancery rule in such cases requires, that is, by two witnesses, or one witness and strong corroborating circumstances, but, in my opinion, the complainant has not succeeded, in this case, in producing that kind of evidence which the rule referred to requires. On the contrary, without going into details, I am persuaded, the proof in support of the answer, so far as this particular question is concerned, is stronger than that relied upon to overthrow it.

The complainant's solicitor pressed upon the court the circumstance, that though Mrs. Spencer had, in her answer, spoken of this money as having been, from time to time, placed in the hands of various depositories, she had failed to prove the truth of her answer in this respect, from which an inference unfavorable to the truth of her statement was attempted to be deduced. It is obvious, however, that this argument is open to the observation that it was in the power of the complainant, if he had reason to doubt the statement of the defendant upon this point, to have ascertained the precise truth in regard to it, by himself examining the persons and the officers of the institution in which the money, according to the answer, had, at various times been placed, and his not having done so, may perhaps with more reason create the inference that he was satisfied that such an ex-

amination would avail him nothing. Besides, it seems to me, that the details given in the answer upon this subject are well calculated to create confidence in its truth, as it can hardly be supposed, that any thing but a consciousness of speaking the truth, could have induced the respondent to place in the hands of her adversary the means of exposure, if she was dealing in fiction. Can it be readily believed, that she would have said in her answer, the money was at several times placed in the hands of A. B. and C., if such was not the case, when an application to these parties, which she must have anticipated, would at once have brought upon her the consequences of detected falsehood! I cannot bring myself to believe in such infatuation.

A great deal of stress has been laid by the complainant's solicitor upon a supposed discrepancy between the answer of Mrs. Spencer and the proof in regard to the deposit with Priestly. The answer alleges, that at the time of the marriage of Mrs. Spencer, in 1825, she had in the hands of Dr. Cromwell about six hundred dollars, which, subsequently to her marriage, was, with the interest, withdrawn from him, and loaned on interest, to Edward Priestly.

By a pass-book which it seems was used as evidence of the deposits made with Priestly, the money it appears, was not all placed in his hands at one time, and in one round sum, but at various times and in various amounts, commencing in May, 1834, and terminating in October, 1836, the whole amount so deposited being $872, and deducting some repayments, amounting with interest on the 1st of April, 1847, to $853 64. The discrepancy alleged, is, that the answer is understood as saying that the money previously in the hands of Cromwell was withdrawn in one entire sum, and so placed with Priestly, whilst the proof furnished by the pass-book shows this not to have been the case. But according to my construction of the answer, this criticism, should not be suffered so far to prevail, as to bring it into discredit. The answer does not say that the money was withdrawn from Cromwell, in one round sum. It says, it was taken from him and lent to Priestly, and it is quite consistent

with the answer to prove that it was withdrawn from Cromwell, or Cromwell's executor, (he having died in 1832,) in small sums, and in that way transferred to Priestly from time to time. So far, therefore, as relates to the mortgage debt due from James A. G. Waters, I am of opinion, that it sufficiently appears, that it was the separate estate of Mrs. Spencer, and as such, recognized and consented to by her husband, and that she is now entitled to a decree of foreclosure and sale of the mortgaged premises for the payment thereof.

The next question for consideration relates to the moneys invested in the stock debt of the city of Baltimore. These stocks, according to the answer, were purchased with the balance of the money which had been in the hands of Priestly, and which amounted to about three hundred dollars, and about the sum of four hundred and sixteen dollars given her by her husband chiefly in what are called rail road orders.

The defendant's title then to these stocks, or their proceeds, to the amount of $416, (they having been sold by her,) depends upon the sufficiency of the gift from her husband, as asserted in the answer. That courts of equity will uphold gifts from a husband to his wife, after marriage, is clearly established, though such gifts are ordinarily void at law, and the gift will, as against him, but not as against his creditors, vest in the wife an unimpeachable right of property, and will be treated as her exclusive and separate estate. 2 *Story's Eq.*, sections 1374, 1375; *Lucas* vs. *Lucas*, 1 *Atk.*, 270, 271. But to establish a gift of this description, the courts of equity require clear and incontrovertible evidence, and, in my opinion, the defendant in this case has failed, so far as the alleged gift is concerned, in laying before the court that convincing and irresistible proof which the rule requires. 2 *Story's Eq.*, section 1375.

The case, to be sure, is not wholly destitute of proof upon this point, but there is not to be found that kind of clear and satisfactory evidence which, for obvious and wise purposes, is required to make out a title to property under such circumstances. I am, therefore, of opinion, that the defendant, Charlotte Spencer, must account with the plaintiff, for the proceeds

of the stock purchased with the sum of $416, with interest from the period of the death of her husband in December, 1844, and will sign a decree accordingly.

The solicitor of either party, may then prepare a decree consolidating the two cases, directing a sale of the mortgaged premises, unless the debt due upon the mortgage is paid, with interest and costs, by a day to be limited, and that Charlotte Spencer account with the administrator of her husband, for the proceeds of the stock purchased with the sum of $416, with interest from the day of his death. The case to be referred to the Auditor for the purpose of stating the account upon the proof now in the cause, and such further proof as may be laid before him by the parties, for which purpose, a reasonable time will be given.

WILLIAM H. NORRIS for Complainant.
CHARLES F. MAYER for Defendants.